NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCISCO HERRERA-GENAO,<br><br>Defendant. | Cr. No. 07-454<br><br>OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Compassionate Release under the First Step Act filed by Defendant Francisco Herrera-Genao ("Defendant"). (ECF Nos. 192, 206, 207.) The United States of America (the "Government") opposes. (ECF No. 210.) The Court has decided the Motion based on the written submissions of the parties and a hearing at which Defendant testified. For the reasons stated herein, Defendant's Motion for Compassionate Release is granted in part.

## FACTUAL BACKGROUND

**I.  Offenses**

From February to March 2007, Defendant and co-conspirators committed four armed bank robberies in New Jersey. (*See* Presentence Report ("PSR") ¶ 6, Gov't's Ex. 1.) In the first two robberies, Defendant fired his .380 semi-automatic handgun into the ceilings of the banks. (*Id.* ¶¶ 23, 28.) In the third robbery, Defendant pointed his gun at individuals in the bank and threatened to kill a teller. (*Id.* ¶ 32.) In the fourth robbery, Defendant fired his gun, shattering a glass partition and sending glass and bullet fragments into the face of a teller, who was rushed to

1

the hospital. (*Id.* ¶ 37.) Defendant and his co-conspirators used stolen automobiles as getaway cars. (*Id.* ¶¶ 23, 28, 32, 36, 41.)

On April 5, 2007, FBI agents intercepted Defendant and a co-conspirator after they arrived at another bank to commit a fifth robbery. (*Id.* ¶ 43.) Defendant fled into the woods and was arrested the following day. (*Id.*)

While arresting another co-conspirator, a veteran FBI agent was accidentally shot and killed by another agent. (*See id.* ¶ 44.)

## II.     Charges, Trial, and Sentencing

On October 3, 2008, a federal grand jury returned an eleven-count Second Superseding Indictment, charging Defendant with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; four counts of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); one count of attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2; and five counts of possessing, brandishing, and/or discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(C)(i), and 2. (2d Superseding Indictment at 1–13, ECF No. 41.) Defendant and his co-conspirators were not charged with the FBI agent's death. (PSR ¶ 44.)

At trial in December 2008, a jury found Defendant guilty on all counts. (ECF No. 72.) In May 2009, this Court sentenced Defendant to a term of incarceration of 1,407 months, or over 117 years. (J. at 2, ECF No. 79.) Defendant received a sentence of 87 months on each of the conspiracy, armed bank robbery, and attempted bank robbery counts, to run concurrently; 120 months on the first § 924(c) count, to run consecutively to the 87-month sentences; and 300 months on each of the remaining four § 924(c) counts, to run consecutively to each other and the other counts. (*Id.*) Defendant has served over fourteen years of his sentence. His projected

release date is April 1, 2107. *Find an Inmate,* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 16, 2021).

### III. Procedural History

In May 2020, Defendant filed a pro se application for compassionate release with the Bureau of Prisons ("BOP"). (Gov't's Ex. 2.) The BOP denied Defendant's request on June 12, 2020. (*Id.*)

On August 24, 2020, Defendant filed a pro se Motion for Compassionate Release under the First Step Act in this Court. (ECF No. 192.) On February 9, 2021, Defendant filed a pro se Amended Motion. (ECF No. 206.) On February 19, 2021, Defendant's counsel filed a Supplemental Motion. (ECF No. 207.) The Government opposed. (ECF No. 210.)

On May 11, 2021, the Court held an in-person hearing at which Defendant and Defendant's sister testified. Defendant's Motion for Compassionate Release is presently before the Court.

## **LEGAL BACKGROUND**

The First Step Act was enacted in December 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act made two changes to criminal statutes relevant to this case.

First, the statute changed the sentencing calculations under 18 U.S.C. § 924(c). Section 924(c) imposes mandatory minimum sentences for possessing, brandishing, or discharging a firearm in connection with a crime of violence. *See* 18 U.S.C. § 924(c). For a first offense, § 924(c) imposes a five-, seven-, or ten-year mandatory minimum, depending on the circumstances of the offense. *See* § 924(c)(1)(A). For a subsequent conviction, § 924(c) imposes a consecutive, twenty-five-year mandatory minimum. *See* §§ 924(c)(1)(C)–(D). Before the First Step Act, a conviction was considered "second or subsequent," triggering the twenty-five-year mandatory

minimum, even where the first § 924(c) conviction occurred in the same case. *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). This was known as sentence "stacking." *Id.* The First Step Act eliminated § 924(c)'s "stacking" requirement. *United States v. Hodge*, 948 F.3d 160, 161 n.2 (3d Cir. 2020). Now, the twenty-five-year mandatory minimum only applies where a prior § 924(c) conviction "has become final." *See* First Step Act § 403, Pub. L. 115-391, 132 Stat. at 5221–22. This change does not apply retroactively. *Hodge*, 948 F.3d at 162.

Second, the First Step Act enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the BOP was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Now, "BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, . . . [but] a defendant . . . has recourse [by filing a motion in federal court] if BOP either declines to support or fails to act on that defendant's motion." *Id.*

A court may reduce a defendant's sentence or order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). "[B]efore granting compassionate release, a district court must 'consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable.'" *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).[1]

---

[1] The statute provides, in relevant part,

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

Congress directed the U.S. Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). In response, the Sentencing Commission issued U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 (the "Policy Statement").

The Sentencing Commission's Policy Statement contains an Application Note listing "extraordinary and compelling reasons," including a defendant's medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Application Note 1(D) provides that the BOP can determine "extraordinary and compelling reason[s] other than, or in combination with," the enumerated reasons. U.S.S.G. § 1B1.13, Application Note 1(D).

The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines. U.S. Sentencing Comm'n, *Annual Report* 2 (2020),

---

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582.

https://www.ussc.gov/about/annual-report-2020. Accordingly, the Sentencing Commission has not revised the Policy Statement after the First Step Act. *Brooker*, 976 F.3d at 233–34. The Third Circuit has "noted that, under [18 U.S.C.] § 3582(c)(1)(A), a sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Burton*, 845 F. App'x 97, 99 (3d Cir. 2021) (quoting *Pawlowski*, 967 F.3d at 329 n.6). But the Third Circuit has not directly addressed the applicability of the Policy Statement to motions for compassionate release filed by defendants after the First Step Act. *See id.*

## DISCUSSION

**I.  Exhaustion**

Defendant listed one basis for compassionate release in his pro se application to the BOP: "the injustice of facing a term of incarceration under [18 U.S.C.] § 924(c) much longer than Congress now deems warranted for the crime committed." (Gov't's Ex. 2.) The Government concedes that Defendant has satisfied the First Step Act's exhaustion requirement with respect to that argument. (*See* Opp'n at 9–10, ECF No. 210.) But because Defendant's initial request only relied on that basis, the Government asserts that Defendant has not satisfied the First Step Act's exhaustion requirement with respect to the other arguments he now submits to the Court. (*See id.* at 13–14.)

The Court disagrees with the Government's proposed "issue exhaustion" requirement. "[R]equirements of administrative issue exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000). The text of the First Step Act does not mandate issue exhaustion. *See* 18 U.S.C. § 3582(c)(1)(A). And the BOP regulation requiring an inmate to detail the circumstances warranting compassionate release was promulgated before the First Step Act. *See* 28 C.F.R. § 571.61(a).

In certain circumstances, courts have required issue exhaustion even in the absence of statutory or regulatory requirements. "[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims*, 530 U.S. at 109. "Where the parties are expected to develop the issues in an adversarial administrative proceeding, . . . the rationale for requiring issue exhaustion is at its greatest." *Id.* at 110.

The rationale for requiring issue exhaustion does not apply to compassionate-release motions. In *Sims*, a plurality of the Supreme Court concluded that social security claimants who exhaust administrative remedies "need not also exhaust issues in a request for review by the [Social Security] Appeals Council in order to preserve judicial review of those issues." *Id.* at 112. The plurality reasoned that "[i]t is the [administrative law judge's] duty to investigate the facts and develop the arguments both for and against granting benefits . . . [and] [t]he Commissioner has no representative before the [administrative law judge] to oppose the claim for benefits." *Id.* at 111 (citations omitted). When prisoners apply to the BOP for compassionate release, the BOP has a duty to investigate facts and develop arguments for and against release. And the Government does not appear before the BOP to oppose those requests. Because compassionate-release proceedings before the BOP are "inquisitorial rather than adversarial," *see id.* at 110–11, the Court agrees with other courts that have not required issue exhaustion under Section 3582(c)(1)(A). *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 657 (S.D.N.Y. 2020); *United States v. Brown*, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020); *cf. United States v. McDonald*, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *Torres* approvingly). *But see United States v. McNair*, 481 F. Supp. 3d 362, 365–69 (D.N.J. 2020).

**II.     "Extraordinary and Compelling Reasons"**

Defendant's pro se Amended Motion presents four grounds for compassionate release: (1) COVID-19, a contagious respiratory virus; (2) family circumstances; (3) an Assistant U.S. Attorney's alleged perjury at a hearing; and (4) rehabilitation. (*See* Pro Se Am. Mot. at 1–5, ECF No. 206.)[2] Defendant's Supplemental Motion presents three additional grounds for compassionate release: (5) Defendant's "young age at the time of [his] offense"; (6) Defendant's lack of criminal history prior to his 2007 offenses; and (7) the First Step Act's elimination of 18 U.S.C. § 924(c)'s "stacking" requirement. (Suppl. Mot. at 3, ECF No. 207.)

A.     *Applicability of Policy Statement*

As a preliminary matter, the Court is not bound by the Policy Statement's definition of "extraordinary and compelling reasons." Any sentence reduction under Section 3582(c)(1)(A) must be "consistent with *applicable* policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The Court concludes, however, that the Policy Statement is not "applicable" to motions for compassionate release filed by *defendants*, as opposed to the BOP.

A majority of the Courts of Appeals have reached the same conclusion. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021); *Brooker*, 976 F.3d at 236; *McCoy*, 981 F.3d at 282; *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d

---

[2] Defendant also references "deportation" as a reason for compassionate release. (Pro Se Am. Mot. at 1, ECF No. 206.) Defendant's counsel explains that Defendant "is not a U.S. citizen and will likely be deported to the Dominican Republic when released." (Suppl. Mot. at 4 n.5, ECF No. 207.)

1035, 1050 (10th Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).[3] Those courts have relied on

> the text of U.S.S.G. § 1B1.13, which begins "[u]pon motion of the Director of the Bureau of Prisons"; . . . the text of Application Note 4 to § 1B1.13, which states that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)"; . . . the text of Application Note 1(D) to § 1B1.13, which is a catch-all provision allowing only the "Director of the Bureau of Prisons" to determine "other" extraordinary and compelling reasons; and . . . the legislative history of the First Step Act's compassionate-release amendment, which sought to expand and expedite compassionate-release motions because they had seldom been brought by the BOP.

*Aruda*, 993 F.3d at 801 (citing *McGee*, 992 F.3d at 1047–51; *McCoy*, 981 F.3d at 280–84; *Gunn*, 980 F.3d at 1180; *Jones*, 980 F.3d at 1109–11; *Brooker*, 976 F.3d at 235–37).

The Court adopts this reasoning. Because the Court concludes that it is not bound by the Sentencing Commission's Policy Statement, it will consider proffered "extraordinary and compelling reasons" other than those listed in the Policy Statement.

      B.     *COVID-19, Family Circumstances, and Alleged Perjury*

Three of Defendant's arguments do not support a sentence reduction. First, Defendant has not suggested that he suffers from any medical condition that has been identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. At the hearing, Defendant testified that he believes he contracted COVID-19 in prison. (Hr'g Tr. 24:25–26:9, ECF No. 213.) But there is no indication in the record that Defendant tested positive for COVID-19, and he has tested negative for the virus at least twice. (*See* Gov't's Ex. 3.) The Third Circuit

---

[3] Courts of Appeals have also instructed that the Policy Statement, although not binding, "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)); *see also, e.g.*, *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021).

9

has concluded that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The fact that Defendant declined a vaccination for COVID-19 does not somehow strengthen his argument. (*See* Gov't's Ex. 3.)

Second, the family circumstances that Defendant cites do not rise to the level of "extraordinary and compelling reasons." Defendant explains that his mother "is getting up in age and [he] is her only son," he "would like to be there for [his mother] in her waning years," and he "would also like to be there for [his] sister." (Suppl. Mot. Attach. C.) But Defendant has not submitted sufficient information to suggest that his family circumstances justify a reduction in his sentence.

Third, Defendant's perjury allegations do not support a sentence reduction. Defendant argues that the Assistant U.S. Attorney from his trial falsely testified at a hearing as to why the parties did not reach a plea agreement. (*See* Pro Se Am. Mot. at 2–6.) Defendant appears to assert that the Government extended a plea offer of "45/37 years" and Defendant's trial counsel confirmed with the Government that Defendant wanted to plead guilty. (*See id.* at 4–5; *see also id.* Ex. B.)

In its disposition of Defendant's 2012 motion for relief under 28 U.S.C. § 2255, the Court already considered whether the Government extended a plea offer to Defendant. After conducting an evidentiary hearing—which included testimony from Defendant, Defendant's trial counsel, and the trial Assistant U.S. Attorney—the Court concluded it could not "find that a definitive plea offer existed." *Herrera-Genao v. United States*, 2014 WL 6386807, at *9 (D.N.J. Nov. 14, 2014). The Court also determined that Defendant "was unwilling to accept any offer

10

that exposed him to 37 or 45 years of imprisonment." *Id.*[4]

In any event, "when a motion titled as a § 3582 motion otherwise attacks the petitioner's underlying conviction or sentence, that is an attack on the merits of the case and should be construed as a [motion for relief under § 2255]." *United States v. Carter*, 500 F.3d 486, 490 (6th Cir. 2007). Because Defendant's perjury argument attacks his underlying conviction, the Court construes it as a second or successive § 2255 motion. "A second or successive [§ 2255] motion must be certified as provided in [28 U.S.C. § 2244] by a panel of the appropriate court of appeals . . . ." 28 U.S.C. § 2255(h). Because the Third Circuit has not certified Defendant's Motion, the Court will not consider the merits of Defendant's perjury argument in its analysis of "extraordinary and compelling reasons."

In sum, Defendant's arguments regarding COVID-19, family circumstances, and alleged perjury are not "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i).

C.   *Elimination of § 924(c)'s "Stacking" Requirement, Rehabilitation, and Age*

Three other reasons submitted by Defendant, however, are "extraordinary and compelling reasons" warranting a sentence reduction. Although the Court considers these circumstances cumulatively, the Court will discuss each in turn.

1.   Elimination of § 924(c)'s "Stacking" Requirement

The Government, pointing to the non-retroactivity of the First Step Act's amendment to § 924(c), argues that this statutory change cannot be a basis for reducing Defendant's sentence. (*See* Opp'n at 20–25.) The Court disagrees.

---

[4] The Court denied Defendant's motion for relief under 28 U.S.C. § 2255, but granted a certificate of appealability on one issue: ineffective assistance of Defendant's trial counsel during plea negotiations. (Civ. No. 12-6119, ECF No. 45.) The Third Circuit affirmed. *Herrera-Genao v. United States*, 641 F. App'x 190, 193 (3d Cir. 2016).

11

The amendment's non-retroactivity does not foreclose its consideration as an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i). As the Fourth Circuit explained in *McCoy*, "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." 981 F.3d at 287. And there is "nothing inconsistent about Congress's paired First Step Act judgments: that not *all* defendants convicted under § 924(c) should receive new sentences, but that the courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis." *Id.* (internal quotation marks omitted).

At least three Courts of Appeals have concluded that, at least when considered alongside other circumstances, the First Step Act's elimination of § 924(c)'s "stacking" requirement can be an "extraordinary and compelling reason" under the compassionate-release statute. *See id.* at 286; *United States v. Black*, 2021 WL 2283876, at *3–4 (7th Cir. June 4, 2021); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). *But see United States v. Jarvis*, 2021 WL 2253235, at *1–5 (6th Cir. June 3, 2021) (disagreeing with *McCoy* and *Maumau* but concluding that the First Step Act's non-retroactive amendments can be considered in courts' analyses of the 18 U.S.C. § 3553(a) factors).

This Court, following those persuasive precedents, accounts for the disparity between Defendant's 2009 sentence and what his sentence would be if he were convicted of the same counts today. When he was sentenced in 2009, Defendant faced a mandatory minimum sentence of 110 years' imprisonment on his § 924(c) counts alone; if he were convicted of the same counts today, he would face a mandatory minimum sentence of 42 years' imprisonment on his §

12

924(c) counts alone.[5] The Court does not consider this 68-year disparity in isolation; rather, the Court considers the disparity in combination with other "extraordinary and compelling reasons."

    2.    <u>Rehabilitation</u>

The Court held an in-person hearing in part to assess Defendant's rehabilitation in prison. Testimony at the hearing highlighted the extent of his rehabilitation.

Defendant expresses remorse for his offenses. In prison, Defendant has participated in programs that have "change[d] [his] view" of what he did. (*See* Hr'g Tr. 6:23–8:2.) For example, in the "Life Connections Program," Defendant "started feeling remorse for people that got hurt . . . [in his] case." (*Id.* at 8:11–12.) Following the program, Defendant apparently wrote a letter to one of his victims to apologize for hurting her and to ask for forgiveness. (*Id.* at 8:12–23.)[6]

Despite facing a 117-year sentence, Defendant has taken initiative to develop as a person. Defendant testified that "when [he] was in the street [he] actually didn't have . . . love for [him]self." (*Id.* at 9:8–9.) Now, Defendant says that he "love[s] [him]self and [is] also a caring person for the next individual." (*Id.* at 14:16–17.) Defendant testified that his practice of religion has instilled moral lessons. (*See, e.g.*, *id.* at 9:18–20 ("I try to apply what . . . the Koran say[s] how to be more of a humble person and love to humanity.").) And Defendant testified that his programs have helped him avoid conflict in prison. (*See id.* at 17:9–20:4.) Although Defendant faced disciplinary charges early in his prison term, he has no disciplinary record since 2010. (*See* Suppl. Mot. Attach. D.) Because of his development, Defendant believes that he can serve as a

---

[5] Defendant would face a mandatory minimum of ten years on Counts 3, 5, and 9 of the Second Superseding Indictment; a mandatory minimum of seven years on Count 7; and a mandatory minimum of five years on Count 11. *See* 18 U.S.C. § 924(c)(1). Those sentences would run consecutively to each other and all other counts. *See* § 924(c)(1)(D)(ii).

[6] Defendant reports that the victim did not respond to his letter. (Hr'g Tr. 8:24–9:2, ECF No. 213.)

"good example for society." (*See* Hr'g Tr. at 28:12–15.)

Defendant has also taken steps toward a more productive life. Defendant has worked in food service and as a cleaner. (*Id.* at 20:5–13.) He has enrolled in several courses, including Problem Solving, Effective Communication, Building Trades, Electronic Law Library, African American History, and Yoga. (Suppl. Mot. Attach. D.) Defendant has also formed relationships with fellow inmates. He testified that he "miss[ed] the community" in prison while traveling to New Jersey for his hearing. (Hr'g Tr. at 21:14–20.) He and his fellow inmates "laugh together," play basketball together, and "counsel each other." (*Id.* at 21:15–18.)

Defendant has even become a community leader while incarcerated. He served as the imam in FCI Lewisburg. (*Id.* at 15:20–21.) In that role, he led religious services and offered advice to other inmates. (*Id.* at 16:3–13.)

Defendant's sister's credible and heartfelt testimony illustrates Defendant's personal development since 2007. Defendant's sister, now a college graduate (*id.* at 33:22–25), was eight years old when Defendant was arrested (*id.* at 23:22–23). She testified that "[i]t's been like night and day the person that [Defendant] has become." (*Id.* at 31:18–19.) She repeatedly expressed that Defendant has learned to avoid confrontation. (*See, e.g.*, *id.* at 31:22–24, 33:3–7.) Defendant supports his sister and offers her advice. (*See id.* at 32:4–6 ("He's someone that I know I can talk to about anything and he's there for me.").) Defendant's sister does not believe that Defendant would be a danger to society if he were released. (*Id.* at 32:23–33:2 ("I'm a very honest person. If he was a danger I would probably say he needs a little bit more work. But, no, I don't see it happening ever.").)

Defendant's sister also helpfully sent a letter to the Court highlighting Defendant's rehabilitation. The letter discusses changes in Defendant's demeanor and approach to conflict.

14

Defendant's sister writes that Defendant "went in [to prison] a hot headed, impulsive, and reckless 22 year old boy and has blossomed into a respectful, kind, and peaceful 36 year old man." (Letter at 1; *see also id.* at 2 ("I've seen him change from someone who . . . was headed down a path of destruction into someone wiser, kinder, and more at ease with himself.")) She calls Defendant her "confidant and best friend." (*Id.* at 2.) And she describes Defendant as a man with hope and aspirations. She writes that Defendant is someone "who wants to live more than ever and has dreams for his future." (*Id.*)

### 3. Defendant's Age at the Time of His Offenses

Courts of Appeals have endorsed consideration of a defendant's age under the compassionate-release statute. *See McCoy*, 981 F.3d at 286 (citing *Brooker*, 976 F.3d at 238); *Maumau*, 993 F.3d at 837. In *United States v. Ramsay*, 2021 WL 1877963 (S.D.N.Y. May 11, 2021), Judge Rakoff, relying on Supreme Court precedents and studies in neuroscience, psychology, and sociology, discussed attributes of the adolescent brain that should be considered in sentencing. *See id.* at *7–13. Those attributes include immaturity, susceptibility to negative influences and outside pressures, salvageability, and dependence. *See id.* at *7–12.

Although Defendant was twenty-two years old when he committed his offenses, certain attributes of the adolescent brain are relevant to his case. For example, "psychosocial maturity—the capacity to exercise self-restraint[,] especially in emotionally-arousing contexts"—"continues to [develop] throughout the teens and into the twenties"; "researchers [have] concluded that psychosocial maturity increases over time from 10 to 30 years of age." *Id.* at *9 (collecting studies). And based on the relative turbulence of Defendant's upbringing, there is reason to believe that his immaturity may have manifested itself more readily than the average twenty-two-year-old's immaturity. *See infra* Section III.

Still, the Court recognizes the limits of underscoring Defendant's age. Defendant's four bank robberies and attempted fifth bank robbery involved elements of "cold cognition," or "academic or deliberative decision[making]." *See id.* at \*10. They involved planning and preparation, not spur-of-the-moment reactions to stimuli. When making those kinds of deliberative decisions, "adolescents 16 and older reason about as well as adults." *Id.* (citing a 2019 study).

Although youth is not an excuse for criminal conduct, "[y]outh matters in sentencing." *See Jones v. Mississippi*, 141 S. Ct. 1307, 1316 (2021). And society's growing scientific understanding of the characteristics of the young brain informs why this is so. The Court, aware of how the circumstances of Defendant's first twenty-two years may have exacerbated those characteristics, concludes that Defendant's age and immaturity at the time of his offenses are "extraordinary and compelling reasons" under 18 U.S.C. 3582(c)(1)(A)(i).

Taken together, the First Step Act's elimination of § 924(c)'s "stacking" requirement, Defendant's rehabilitation since 2007, and Defendant's age and immaturity when he committed his offenses are "extraordinary and compelling reasons" that warrant a reduction in Defendant's sentence. The Court now considers the applicable 18 U.S.C. § 3553(a) factors.

### III.    18 U.S.C. § 3553(a) Factors

Under the § 3553(a) factors, courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Courts also consider the need for a defendant's sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). And courts consider the need for a defendant's sentence to afford deterrence to criminal conduct and protect the public. §§ 3553(a)(2)(B)–(C).

Defendant's actions terrorized and traumatized. They physically harmed. And they likely had lasting consequences that this Court may never be able to identify or measure. The Court does not disregard the severity of Defendant's offenses in administering a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing.

But the Court must also consider Defendant's history and characteristics in determining what justice might look like in this case. The Court must consider that Defendant did not commit any serious crimes before his bank robberies. (*See* PSR ¶¶ 153–56; Hr'g Tr. 13:2–10.) The Court must consider that, although Defendant had a "good relationship" with his mother and stepfather growing up (PSR ¶ 164), he had no relationship with his biological father, (*see* Hr'g Tr. 10:16–24). The Court must consider that Defendant's father apparently "did lots of drugs" and left powder cocaine around Defendant's family's home. (PSR ¶ 163.) The Court must consider that Defendant first found cocaine in his home at age eleven. (*Id.*) The Court must consider that Defendant attended special education classes throughout school. (*Id.* ¶ 181.) And the Court must consider that, during his presentence interview, Defendant revealed he was sexually abused by a family friend on multiple occasions. (*Id.* ¶ 165.)

To serve the policy aims of 18 U.S.C. § 3553(a), the Court will not release Defendant at this time. But a draconian, 117-year sentence—greater than a life sentence—is far longer than necessary to foster respect for the law, punish Defendant's offenses, and deter criminal conduct. Based on Defendant's history, the testimony as to Defendant's rehabilitation and improved approach to conflict resolution, and the utter discordance between Defendant's sentence and the goals of sentencing, the Court concludes that the § 3553(a) factors weigh in favor of a reduction in Defendant's sentence.

17

IV. **Length of Sentence**

The Court concludes that a twenty-two-year sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing. This sentence is consistent with sentences in similar cases recognizing similar "extraordinary and compelling reasons." *Cf. United States v. McDonel*, 2021 WL 120935, at *7 (E.D. Mich. Jan. 13, 2021) (reducing a sentence to twenty years where the defendant was convicted of five counts of Hobbs Act robbery and five § 924(c) offenses), *appeal docketed*, No. 21-1152 (6th Cir. Feb. 16, 2021); *United States v. Randall*, 2021 WL 922077, at *1 (E.D. Pa. Mar. 11, 2021) (reducing a sentence to time served, or approximately fourteen years, where the defendant pled guilty to six Hobbs Act robberies and two § 924(c) offenses), *appeal docketed*, No. 21-1794 (3d Cir. Apr. 23, 2021); *United States v. Pollard*, 2020 WL 4674126, at *1, *9 (E.D. Pa. Aug. 12, 2020) (reducing a sentence to fourteen years where the defendant pled guilty to one count of conspiracy to interfere with interstate commerce by robbery, four counts of interference with interstate commerce by robbery, and two § 924(c) offenses); *United States v. Clausen*, 2020 WL 4601247, at *1 (E.D. Pa. Aug. 10, 2020) (reducing a sentence to time served, or approximately twenty years, where the defendant was convicted of nine counts of conspiracy to commit Hobbs Act robbery, nine counts of Hobbs Act robbery, and nine § 924(c) offenses).

The Court's sentence is shorter than the amount of time Defendant would be required to serve if he committed the same offenses and were charged with five separate § 924(c) counts today. *See* 18 U.S.C. § 924(c)(1). But the Court bases its decision not merely on the First Step Act's amendments to § 924(c); the Court also relies on Defendant's exhibited rehabilitation and his age at the time of his robberies. And the compassionate-release statute does not suggest that a court exercising its sound discretion is unable to reduce a sentence below consecutive mandatory

minima where extraordinary and compelling reasons justify or require such a reduction. *See Maumau*, 993 F.3d at 824 (affirming the reduction of the defendant's sentence below the mandatory minimum sentence he would have received after the First Step Act); *McDonel*, 2021 WL 120935, at *6 (explaining that "Section 3582(c)(1)(A)(i) authorizes the Court to override statutory mandatory minima and mandatory consecutive sentencing provisions to order immediate release" (emphasis omitted)); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020) (reducing the defendant's sentence below the mandatory minimum under 18 U.S.C. § 3582(c)(1)(A)(i)); *Clausen*, 2020 WL 4601247, at *1 (reducing the defendant's sentence below the mandatory minimum sentence he would have received after the First Step Act).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release under the First Step Act (ECF Nos. 192, 206, 207) is granted in part, and Defendant's sentence is modified to reduce his term of incarceration to 264 months, or twenty-two years. An appropriate Order will follow.

Date: June 16, 2021
/s/ *Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.